FILED

2019 Jun-24  PM 03:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:00-CV-3142 JTC** |
| v. | ) | |
| | ) | **CONSENT DECREE** |
| **COLONIAL PIPELINE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## I.   BACKGROUND

A.   Plaintiff, the United States of America ("United States"), through the Attorney General, at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a civil complaint ("Complaint") against Defendant, Colonial Pipeline Company ("Colonial"), pursuant to the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, seeking injunctive relief and civil penalties for the discharge of oil into navigable waters of the United States or onto adjoining shorelines.

B.   The Parties agree that it is desirable to resolve the claims for civil penalties and injunctive relief asserted in the Complaint without further litigation.

C.   This Consent Decree is entered into between the United States and Colonial for the purpose of settlement and it does not constitute an admission or finding of any violation of federal or state law.  This Decree may not be used in any civil proceeding of any type as evidence or proof of any fact or as evidence of the violation of any law, rule, regulation, or Court decision, except in a proceeding to



EXHIBIT
C

enforce the provisions of this Decree.

D.    To resolve Colonial's civil liability for the claims asserted in the Complaint, Colonial will pay a total civil penalty of $34 million to the United States, comply with the injunctive relief requirements in this Consent Decree, and satisfy all other terms of this Consent Decree.

E.    The Parties agree, and this Court by entering this Consent Decree finds, that this Consent Decree and these civil penalties and injunctive relief solely address the acts and omissions of Colonial alleged in the Complaint and do not address the alleged acts and omissions of any other person or entity.

F.    The Parties agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid further litigation between the Parties related to the claims in the Complaint, and that the settlement embodied by this Consent Decree is fair, reasonable, and in the public interest.

G.    This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree, and the Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED, ADJUDGED AND DECREED:

## II.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action and the Parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E).

2.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1395(a), and 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E).

3.   For the purposes of this Consent Decree and the underlying claims of the United States, Colonial waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Colonial consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

4.   This Consent Decree applies to and is binding on the United States and on Colonial and its successors and assigns.  Any changes in Colonial's ownership or corporate status shall in no way alter Colonial's responsibilities pursuant to this Consent Decree.  Nor shall any change in the ownership of all or a portion of the Pipeline System in any way alter Colonial's responsibilities pursuant to this Consent Decree.  If Colonial transfers ownership of any portion of the Pipeline System to any other entity, Colonial nevertheless shall fulfill all requirements of this Consent Decree regarding the portion of the Pipeline System so transferred.

## IV.   DEFINITIONS

5.      Unless otherwise expressly provided herein, the terms used in this Consent Decree that
        are defined in the CWA, or the regulations promulgated thereunder by EPA, shall have
        the meaning assigned to them in the CWA or in such regulations. Unless otherwise
        expressly provided herein, the terms used in this Consent Decree that are defined or used
        in the Pipeline Safety Act ("PSA"), or defined or used in the regulations promulgated
        thereunder by the Office of Pipeline Safety ("OPS"), shall have the meaning assigned to
        them in the PSA or in such regulations promulgated by OPS.  In the event there is a
        conflict between CWA/EPA or PSA/OPS defined terms, the PSA/OPS meaning shall
        apply to any term or issue arising under, or relating to, Section VI of this Consent
        Decree, and the CWA/EPA meaning shall apply to any term or issue arising under the
        remaining provisions of this Consent Decree.  Whenever terms listed below are used in
        this Consent Decree, the following definitions shall apply:

        a.      "Best Professional Judgment" shall mean engineering judgment based on the
                application of scientific and mathematical principles to the design, construction,
                operation, and maintenance of pipeline systems, with such judgment exercised by
                a suitably qualified person.

        b.      "Cathodic Protection System" shall mean a system to prevent the corrosion of a
                metal surface by making that surface the cathode of an electrochemical cell with
                the use of impressed current or galvanic anodes, as required by OPS regulations,
                49 C.F.R. Part 195.

        c.      "Close Interval Survey" as used in OPS regulations, 49 C.F.R. Part 195, shall

mean an inspection of the cathodic protection system at specified intervals (distances) looking for deficiencies in the system through testing and visual observation.

d.    "Consent Decree" or "Decree" shall mean this document.

e.    "Colonial" shall mean Colonial Pipeline Company, the Defendant in this action, and its successors and assigns.

f.    "CWA" shall mean the Clean Water Act (CWA), 33 U.S.C. §§ 1251 *et seq.*

g.    "Damage Prevention Program" shall mean a written program to prevent damage to the Pipeline from Excavation Activities within the meaning of OPS regulation 49 C.F.R. § 195.442(a) and that is subject to audit and enforcement by OPS pursuant to OPS regulation 49 C.F.R. § 195.402.

h.    "Day" shall mean a calendar day unless expressly stated to be a working day. "Working Day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time pursuant to this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next Working Day.

i.    "Depth of Cover Survey" shall mean an inspection of the Pipeline in accordance with Colonial Engineering Standard ES-03-102 and Colonial's Best Professional Judgment to measure the depth of cover over the Pipeline.

j.    "DOJ" shall mean the United States Department of Justice.

k.    "Engineering Standards" shall mean those engineering standards developed by Colonial that are specifically referenced in this Consent Decree.

l.   "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies.

m.   "ES-03-102" shall mean Colonial's Engineering Standard titled "ES-03-102, Exposed Pipe Assessment and Repair," Issue No. 1,  dated August 7, 2000, or any updated version for the duration of this Consent Decree that is no less stringent than the referenced version.

n.   "ES-14-101" shall mean Colonial's Engineering Standard titled "ES-14-101, Right-of-Way (ROW) Clearing, Marking and Maintenance," Issue No. 2, dated March 26, 2001, or any updated version for the duration of this Consent Decree that is no less stringent than the referenced version.

o.   "Excavation Activities" shall mean the activities set forth in OPS regulation 49 C.F.R. § 195.442(a), which includes excavation, blasting, boring, tunneling, backfilling, the removal of above-ground structures by either explosive or mechanical means, and other earthmoving operations.

p.   "Exposed Pipe" shall mean any portion of buried pipeline that is unintentionally exposed, other than those situations described in OPS regulation 49 C.F.R. § 195.254.

q.   "High Consequence Area" shall have the meaning set forth in OPS regulation 49 C.F.R. § 195.450.

r.   "ILI" shall mean in-line inspection.

s.   "Independent Monitoring Contractor" shall mean the Independent Monitoring Contractor selected pursuant to Section VII of this Consent Decree.

t.   "Integrity Management Program" shall mean the written Integrity Management Program required by OPS regulation 49 C.F.R. § 195.452(b) and that is subject to audit and enforcement by OPS pursuant to OPS regulation 49 C.F.R. § 195.402.

u.   "Maintenance Manual" shall mean Colonial's manual(s) of written procedures for conducting normal operations and maintenance activities and handling abnormal operations and emergencies required by OPS regulation 49 C.F.R. § 195.402.

v.   "NACE" shall mean the National Association of Corrosion Engineers.

w.   "NACE Standard RP0169-96" shall mean the document titled "NACE Standard Recommended Practice - Control of External Corrosion on Underground or Submerged Metallic Piping Systems (NACE Standard RP0169-1996)," which is incorporated by reference into OPS regulations at 49 C.F.R. §§ 195.3 and 195.571.

x.   "One-Call System" shall mean a system which complies with OPS regulation 49 C.F.R. § 195.442(b),  whereby interested members of the public may, without charge, obtain information about the location of a buried pipeline.

y.   "OPA" shall mean the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.*

z.   "OPS" shall mean the Office of Pipeline Safety within the Research and Special Programs Administration of the United States Department of Transportation.

aa.   "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

bb.   "Parties" shall mean the United States and Colonial.

cc.   "Pipeline" shall mean all portions of the Pipeline System comprising line pipe,

including all main lines, stub lines, and delivery lines, except as provided in OPS regulation 49 C.F.R. § 195.1(b).

dd.   "Pipeline System" shall mean the existing system owned by Colonial as of January 17, 2003, that is used for transporting gasoline and other petroleum products and includes approximately 5,500 miles of pipeline running between Texas and New Jersey, and associated delivery lines, stub lines, structures and buildings used for operations and administration, control equipment, pumps, valves, breakout tanks, storage tanks, and other equipment used in the operation of the Pipeline, and any extensions to the existing system as of January 17, 2003, constructed during the pendency of this Consent Decree, except as provided in OPS regulation 49 C.F.R. § 195.1(b).

ee.   "PSA" shall mean the Pipeline Safety Act, 49 U.S.C. § 60101 *et seq.*

ff.   "Responsible Corporate Officer" shall mean (i) the president, secretary, treasurer, or vice-president of the corporation in charge of a principal business function, or any other person who performs similar policy or decision-making functions for the corporation, or (ii) the manager of company-wide operations or system integrity functions, provided the manager is authorized in writing by one of the individuals in section (i) above, to act as a responsible corporate officer for purposes of this Consent Decree.

gg.   "Right-of-way," as used in OPS regulation 49 C.F.R. § 195.412(a), shall mean land space in which Colonial has legal rights to locate its pipeline or other facilities and where a Pipeline is actually located.

-8-

hh.     "Right-of-way Reclamation," as used in Colonial Engineering Standard ES-14-101, shall mean removal of trees and other obstructions from a right of way with specialized equipment and personnel, typically involving tree cutting, side trimming and re-landscaping activities.

ii.     "Section" shall mean a portion of this Consent Decree identified by a capitalized Roman numeral.

jj.     "Shallow Pipe" shall mean Pipeline that, although buried, does not contain sufficient cover to prevent damage to the Pipeline, as determined by Colonial's Best Professional Judgment through application of Colonial's Engineering Standards, as distinct from the pipeline construction standards at OPS regulation 49 C.F.R. § 195.248.

kk.     "Submit" shall mean any of the following:  (1) place in certified mail in a properly addressed envelope with sufficient postage; (2) tender to an overnight courier in a properly addressed envelope, and prepay the delivery fees; or (3) hand deliver and obtain signature of recipient.

ll.     "Subparagraph" shall mean a portion of this Consent Decree identified by an upper or lower case letter.

mm.     "Third-Party Excavation" shall mean Excavation Activities conducted by persons other than Colonial or its contractors.

nn.     "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities.

oo.     "Water Crossing" shall mean a location of the Pipeline that crosses under a water

feature, as identified on United States Geological Survey topographical maps.

pp.   "Water Crossing Inspection" shall mean an inspection of a Water Crossing in accordance with Colonial's Engineering Standards and Colonial's Best Professional Judgment.

**V.   GENERAL PROVISIONS**

6.   <u>Compliance with Applicable Law</u>.  This Consent Decree in no way affects or relieves Colonial of its responsibility to comply with applicable federal, state, and local laws, regulations, and permits.  Incorporation of the requirements in Section VI of this Consent Decree into Colonial's Maintenance Manual and Damage Prevention Program will render those requirements enforceable by OPS under the PSA and its implementing regulations, and enforceable by EPA only as specifically provided in this Consent Decree. Notwithstanding Colonial's incorporation of the requirements in Section VI of this Consent Decree into its Maintenance Manual and Damage Prevention Program, EPA shall maintain the authority to enforce the terms of this Consent Decree, including: (a) the obligation to make the designation and Maintenance Manual and Damage Prevention Program incorporations required by Paragraphs 8-14 herein; (b) the obligation to maintain for the duration of this Consent Decree the designation and Maintenance Manual and Damage Prevention Program incorporations required by Paragraphs 8-14 herein; (c) the obligation to make available to the Independent Monitoring Contractor the information required by Paragraphs 9, 10 and 14 herein; (d) the obligation to hire a qualified Independent Monitoring Contractor and related obligations set forth in Section VII; (e) the obligation to pay the civil penalty of $34,000,000.00 set forth in Section VIII;

and (f) the reporting requirements set forth in Section IX.  Colonial shall perform all work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, and permits.  Except as expressly provided herein, the parties agree that compliance with this Consent Decree shall be no defense to any actions commenced pursuant to federal, state, and local laws, regulations, and permits.  This Consent Decree is not, and shall not be construed as, a permit issued pursuant to any federal, state, or local statute or regulation.

7.     <u>Permits</u>.  Colonial shall submit timely and complete applications for, and otherwise diligently seek to obtain, any and all permits or approvals from federal, state, or other governmental entities necessary to perform work that this Consent Decree requires.

## VI.    INJUNCTIVE RELIEF

8.     Within 30 days of the effective date of this Consent Decree, Colonial shall amend its written Integrity Management Program, developed pursuant to 49 C.F.R. § 195.452, to designate its entire Pipeline as pipeline segments that could affect a High Consequence Area.  Colonial shall maintain such designation until termination of the Consent Decree in accordance with Section XXIII. Once the designation required by this Paragraph has been made, the performance of the obligations under 49 C.F.R. § 195.452 are subject to oversight and enforcement by OPS.  However, Colonial's obligation to maintain the designation required by this Paragraph shall remain enforceable by EPA under this Decree.  In the event that Colonial constructs Pipeline extensions to its Pipeline System prior to termination of the Consent Decree, Colonial shall designate such Pipeline in accordance with this Paragraph and maintain that designation in accordance with this

Paragraph.

9.     Within 30 days of the effective date of this Consent Decree, Colonial shall incorporate into its Maintenance Manual a provision that Colonial shall conduct a close interval survey of the cathodic protection system on its entire Pipeline every five years. Colonial shall maintain this requirement in its Maintenance Manual until termination of the Consent Decree in accordance with Section XXIII.   In the manner specified in Section IX, Colonial shall make available to the Independent Monitoring Contractor retained pursuant to Section VII all close interval survey results.   Once the incorporation required by this Paragraph has been made, the performance of the obligations under this Paragraph are subject to oversight and enforcement by OPS.   However, the obligations to maintain the incorporation and make available the information required by this Paragraph shall remain enforceable by EPA under this Decree.

10.     Within 30 days of the effective date of this Consent Decree, Colonial shall incorporate into its Maintenance Manual a provision requiring Colonial's cathodic protection system to meet the performance standard in NACE Standard RP0169-96 Section 6.  This provision also shall require that, in the event that any close interval survey conducted after the effective date of the Consent Decree reveals any portion of the cathodic protection system that does not meet the NACE standard, Colonial shall perform appropriate repairs to the cathodic protection system necessary to bring that portion of the system into compliance with the NACE standard within one year of the discovery, as defined by 49 C.F.R. § 195.452(h)(2), of the cathodic protection deficiency.  Colonial shall maintain this provision in its Maintenance Manual until termination of the Consent

-12-

Decree in accordance with Section XXIII. In the manner specified in Section IX, Colonial shall make available to the Independent Monitoring Contractor retained pursuant to Section VII information identifying all cathodic protection deficiencies and the associated repairs. Once the incorporation required by this Paragraph has been made, the performance of the obligations under this Paragraph is subject to oversight and enforcement by OPS. However, the obligations to maintain the incorporation and make available the information required by this Paragraph shall remain enforceable by EPA under this Decree.

11. Within 30 days of the effective date of this Consent Decree, Colonial shall incorporate into its Maintenance Manual and/or the Damage Prevention Program a provision requiring ongoing Right-Of-Way Reclamation, conducted in accordance with Colonial's Engineering Standard ES-14-101. Colonial shall maintain this provision in its Maintenance Manual and/or the Damage Prevention Program until termination of the Consent Decree in accordance with Section XXIII. Once the incorporation required by this Paragraph has been made, the performance of the obligations under this Paragraph is subject to oversight and enforcement by OPS. However, the obligation to maintain the incorporation required by this Paragraph shall remain enforceable by EPA under this Decree.

12. Within 30 days of the effective date of this Consent Decree, Colonial shall incorporate written procedures into its Damage Prevention Program and associated procedures requiring that Colonial personnel shall be on site for the duration of all third party excavation activities within five feet of the Pipeline. Such obligation shall be triggered

by one-call notice or notice in any other manner or method (e.g., aerial patrol, right-of-way inspection) consistent with the requirements of OPS regulation 49 C.F.R. § 195.442. Colonial shall maintain these written procedures in its Damage Prevention Program provisions until termination of the Consent Decree in accordance with Section XXIII. Once the incorporation required by this Paragraph has been made, the performance of the obligations under this Paragraph is subject to oversight and enforcement by OPS. However, the obligation to maintain the incorporation required by this Paragraph shall remain enforceable by EPA under this Decree.

13.     Within 30 days of the effective date of this Consent Decree, Colonial shall incorporate into its Maintenance Manual a provision requiring Colonial to conduct, in conjunction with the close interval survey required pursuant to Paragraph 9, a depth-of-cover survey, and at all water crossings an inspection for exposed pipe and shallow cover.  Such surveys and water crossing inspections shall be conducted in accordance with Colonial Engineering Standards and Colonial's Best Professional Judgment.  Colonial shall maintain this provision in its Maintenance Manual until termination of the Consent Decree in accordance with Section XXIII.  Once the incorporation required by this Paragraph has been made, the performance of the obligations under this Paragraph is subject to oversight and enforcement by OPS.  However, the obligation to maintain the incorporation required by this Paragraph shall remain enforceable by EPA under this Decree.

14.   Within 30 days of the effective date of this Consent Decree, Colonial shall incorporate

into its Maintenance Manual a provision requiring Colonial to address any exposed or

shallow pipe in accordance with Colonial's Engineering Standard ES-03-102 within one

year of the discovery of the exposed or shallow pipe.  Colonial shall maintain this

provision in its Maintenance Manual until termination of the Consent Decree in

accordance with Section XXIII.  In the manner specified in Section IX, Colonial shall

make available to the Independent Monitoring Contractor information identifying all

exposed or shallow pipe, including the date of discovery and location, and the remedy

undertaken, if any.  Once the incorporation required by this Paragraph has been made, the

performance of the obligations under this Paragraph is subject to oversight and

enforcement by OPS.  However, the obligations to maintain the incorporation and make

available the information required by this Paragraph shall remain enforceable by EPA

under this Decree.

15.   Within 45 days of the effective date of this Consent Decree, Colonial shall submit to EPA

written notice certifying that it has made the designation and Maintenance Manual and

Damage Prevention Program incorporations required by Paragraphs 8 through 14.

## VII.   INDEPENDENT MONITORING CONTRACTOR

16.   In accordance with the procedure in Paragraph 17, Colonial shall hire an Independent

Monitoring Contractor ("IMC") to perform the duties in Paragraph 18.  Colonial's

contract with the IMC shall require the IMC to perform all of the duties in Paragraph 18,

to provide Quarterly Reports to EPA pursuant to Paragraph 20 based on all information

that Colonial makes available to the IMC, and to be fully available to consult with EPA

upon EPA's request within a reasonable time and upon reasonable notice. Colonial shall bear all costs associated with the IMC, cooperate fully with the IMC, and provide the IMC with access upon reasonable notice and with consideration of operational impacts to all records, employees, contractors, and facilities within the Pipeline System that the IMC deems reasonably necessary to effectively perform the duties described in Paragraph 18. Other than expressly specified in this Consent Decree, neither Colonial nor the IMC shall be expected or required to generate any data or prepare any report not otherwise required by law or the express terms of this Consent Decree.

17. <u>Hiring Process</u>.  Within 30 days of the effective date of this Consent Decree, Colonial shall submit to EPA a list of two or more proposed consultants to serve as the IMC along with their qualifications and descriptions of any previous work or contracts with Colonial Pipeline Company.  Each proposed consultant must employ one or more registered professional engineers:

a.      experienced in the use of ILI technology;

b.      experienced in pipeline repair and maintenance, including, but not limited to, assessment and repair of defects, close interval surveys and maintenance of cathodic protection systems, and exposed and shallow pipe remediation;

c.      experienced in monitoring third party excavation near pipelines; and

d.      familiar with surveying and the use of surveying data, as well as the placement and content of pipeline markers.

The proposed consultants shall not be present employees or contractors of Colonial, or present employees of any contractor of Colonial.  Within 30 days of receiving the list of

-16-

proposed consultants, EPA shall approve or disapprove each member of the list, which approval shall not be unreasonably withheld.  Within 30 days after receipt of EPA's approval, Colonial shall select one contractor from those contractors approved by EPA and shall enter into the contract described in Paragraphs 16 and 18.  In the event the contractor(s) approved by EPA are no longer available or willing to accept the work described in Paragraph 18 when notified of their selection by Colonial, then Colonial shall select another contractor approved by EPA and enter into the contract described in Paragraphs 16 and 18 within 30 days.  If EPA disapproves of all of the proposed consultants on Colonial's list, then Colonial shall submit another list of proposed contractors to EPA within 30 days of receipt of EPA's written notice disapproving of the contractors on the previous list.  If after Colonial has submitted a third list of contractors, which must be submitted within 30 days of receipt of written notice disapproving of all of the contractors on Colonial's second list, the parties are unable to agree on an IMC, the parties agree to resolve the selection of the IMC through the dispute resolution process in Section XIV.

18.   Duties of the Independent Monitoring Contractor.  Colonial's contract with the Independent Monitoring Contractor shall provide that the Independent Monitoring Contractor shall perform the following duties:

a.      review Colonial's written Integrity Management Program, Maintenance Manual and Damage Prevention Program to ensure that Colonial has made and maintained the designations and incorporations required by Section VI of this Consent Decree;

-17-

b.   review the information made available by Colonial pursuant to Section IX of this Consent Decree;

c.   submit quarterly reports to EPA (with copies to Colonial) to assess whether Colonial has made and maintained the designations and incorporations required in Section VI of this Consent Decree and to monitor Colonial's activities under this Consent Decree in the following areas: (i) inspection for and repair of pipeline defects; (ii) inspection and repair of the Pipeline's cathodic protection system; (iii) right-of-way reclamation and related maintenance; (iv) monitoring of third-party excavation; and (v) depth-of-cover surveys and water crossing inspections and repair of exposed pipe or shallow cover; and

d.   make available to EPA, at its request, any documentation provided by Colonial.

19.   Replacement Procedure.  If the Independent Monitoring Contractor becomes unable or unwilling to perform or complete the duties described in Paragraph 18, or for other good cause, Colonial and EPA shall confer in good faith regarding whether or not Colonial and EPA need to select a replacement Independent Monitoring Contractor.  If Colonial and EPA agree on the need to select a replacement Independent Monitoring Contractor, Colonial and EPA shall select the replacement Independent Monitoring Contractor in accordance with the selection procedures in Paragraph 17 of this Consent Decree.  If Colonial and EPA do not agree on the need to select a replacement Independent Monitoring Contractor, either Colonial or EPA may invoke the dispute resolution procedures in Section XIV of the Consent Decree.  Replacement of the Independent Monitoring Contractor may constitute a *force majeure* event pursuant to Section XIII of

-18-

this Consent Decree.  For the purposes of this Paragraph, "EPA" shall mean Section

Chief, North Enforcement and Compliance Section, RCRA Enforcement and Compliance

Branch, EPA Region 4, or his designee.

20.     Quarterly Reports.  Once Colonial has retained the Independent Monitoring Contractor

        pursuant to Paragraph 17 of the Decree, the Independent Monitoring Contractor shall

        provide certified Quarterly Reports to EPA in accordance with the requirements of this

        Paragraph.  The first Quarterly Report shall be due within 90 days of the close of the

        calendar year quarter after EPA has approved the Independent Monitoring Contractor

        pursuant to Paragraph 17 of the Decree with subsequent reports due within 90 days of the

        close of each calendar year quarter thereafter.   Each Quarterly Report shall include:

        a.      copies of any modifications to the following documents, including the initial

                designation required by Paragraph 8 and the initial incorporations required by

                Paragraphs 9-14, as required by Section VI of this Decree, and any copies of

                subsequent modifications, if any, relevant to the obligations required by Section

                VI:

                (i)      Colonial's written Integrity Management Program;

                (ii)     Colonial's Maintenance Manual;

                (iii)    Colonial's Damage Prevention Program; and

                (iv)     Colonial's Engineering Standards;

        b.      summaries or descriptions of all close interval surveys conducted and not

                previously reported, in accordance with Paragraph 9;

        c.      summaries or descriptions of all cathodic protection deficiencies, in accordance

with Paragraph 10;

d.      information on exposed and shallow pipe, in accordance with Paragraph 14;

e.      a description of Colonial's activities not previously reported in the following

areas:

(i)      internal line inspections or other investigations for pipeline defects;

(ii)     defect assessments and repairs;

(iii)    performance of close interval surveys and repairs to pipeline coating or

cathodic protection;

(iv)     right-of-way reclamation and related maintenance;

(v)      monitoring of third-party excavation;

(vi)     depth-of-cover surveys and water crossing inspections; and

(vii)    remediation of exposed and shallow pipe.

f.      any failure to meet the requirements of the Decree that occurred or remained

unresolved at any time during the reporting period, the reasons for any such

failure to comply, and all actions taken or planned to correct failures to comply

with this Consent Decree during the reporting period, including any known delays

or other problems that may affect compliance with this Decree; and

g.      the amount of stipulated penalties and interest, if any, accrued as of the last day of

the reporting period as a result of noncompliance with the Consent Decree,

including:

(I)      a description of each violation and the date noncompliance began and

ended, if applicable;

-20-

> (ii)    a summary of the calculation of the amount of the stipulated penalty for
>         each violation as of the last day of the reporting period; and
>
> (iii)   a description of each violation for which Colonial has submitted to EPA
>         an unresolved *force majeure* claim or intends to submit a *force majeure*
>         claim pursuant to Section XIII of this Consent Decree.

Before preparation and submittal of each Quarterly Report, the IMC shall consult with Colonial on all of the above contents of the Quarterly Report.

21.    Neither Colonial nor the United States shall be bound by the statements, conclusions or opinions of the Independent Monitoring Contractor.  However, if Colonial violates any requirement of this Consent Decree, Colonial shall be liable for stipulated penalties to the United States, unless excused by *force majeure*, pursuant to Section XIII, regardless of the statements, conclusions or opinions of the Independent Monitoring Contractor.

## VIII.    PAYMENT OF CIVIL PENALTIES

22.    Within thirty days of the effective date of this Consent Decree, Colonial shall pay to the United States a civil penalty of $34,000,000.00.

23.    Colonial shall make the payment described in Paragraph 22 in the manner specified in Section XII of this Consent Decree.

24.    If any payment required by Paragraph 22 of this Decree is not paid when due, Colonial shall pay stipulated penalties in accordance with Section XI, and interest in accordance with Section XII.

## IX.    REPORTING REQUIREMENTS

25.    During the pendency of this Consent Decree, Colonial shall make available to the

Independent Monitoring Contractor any and all information necessary for the Independent Monitoring Contractor to produce the quarterly reports required in Paragraph 20 of this Consent Decree.  Colonial shall also make available to the Independent Monitoring Contractor the information required in Paragraphs 9, 10 and 14 of this Consent Decree.

26.  <u>Certifications</u>.  Pursuant to Paragraphs 15 and 71 when this Consent Decree requires Colonial to certify a report or any other submission or provision of information, Colonial shall submit the following written statement with the submission, signed by a responsible corporate official:

I certify under penalty of law that this submission was prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  I further certify under penalty of law that, to the best of my knowledge, based on my reasonable inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Pursuant to Paragraph 20 when this Consent Decree requires the Independent Monitoring Contractor to certify a report or any other submission or provision of information, the Independent Monitoring Contractor shall submit the following signed written statement with the submission:

I certify that this submission was prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  I further certify that, to the best of my knowledge, based on my reasonable inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is true, accurate, and complete.

**X.     SITE ACCESS**

27.    From the effective date of this Consent Decree until its termination date as described in
Section XXIII Colonial agrees to provide the Independent Monitoring Contractor, and all
persons performing actions at the direction of the Independent Monitoring Contractor,
upon reasonable notice and with consideration of operational impacts, prompt access at
all reasonable times to the Pipeline System, employees, and all property on which the
Pipeline System is located, consistent with Colonial's right of access, for the purposes of
conducting any activity related to this Consent Decree including, but not limited to,
assessing, monitoring, or verifying compliance with the terms of this Consent Decree,
and verifying any data or information submitted by Colonial pursuant to this Consent
Decree.

28.    Notwithstanding any provisions of this Consent Decree, the United States retains all of its
access authorities and rights, including enforcement authorities related thereto, pursuant
to the CWA and any other applicable statutes or regulations.

**XI.    STIPULATED PENALTIES**

29.    Colonial shall be liable to the United States for stipulated penalties in the amounts set
forth in Paragraphs 30 and 31 for failure to comply with the requirements of this Consent
Decree, unless excused pursuant to Section XIII. "Noncompliance" by Colonial shall
include failure to complete the requirements of this Consent Decree within the time
allowed in the Decree in accordance with all applicable requirements of law.

30.   The following stipulated penalties shall accrue per violation per day for any

noncompliance identified in Subparagraphs a and b below:

| Penalty Per Noncompliance | Period of Noncompliance |
|---|---|
| $500 per day or portion thereof | 1st through 15th day |
| $1,250 per day or portion thereof | 16th through 30th day |
| $2,500 per day or portion thereof | 31st day and beyond |

a.   Failure to timely pay civil penalties in accordance with the terms of Section VIII.

b.   Failure to comply with the requirements in this Consent Decree other than the

reporting requirements specified in Paragraph 31 below.

31.   The following stipulated penalties shall accrue per violation per day for any failure to

comply with the reporting requirements specified in Sections VII and IX:

| Penalty Per Noncompliance | Period of Noncompliance |
|---|---|
| $250 per day or portion thereof | 1st through 15th day |
| $500 per day or portion thereof | 16th through 30th day |
| $1,250 per day or portion thereof | 31st day and beyond |

32.   All stipulated penalties shall begin to accrue on the day after the violation occurs, and

shall continue to accrue through the final day of the correction of the noncompliance.

Nothing herein shall prevent the simultaneous accrual of separate penalties for separate

violations of this Consent Decree.

33.   If EPA determines that Colonial has failed to comply with a requirement of this Consent

Decree, EPA may give Colonial written notification of the same and describe the

noncompliance.  EPA may send to Colonial a written demand for the payment of

penalties. Stipulated penalties shall accrue as provided in Paragraph 32 of this Consent Decree, and shall be due and owing, however, regardless of whether or not EPA has notified Colonial of a violation. Colonial shall pay the stipulated penalties specified in EPA's written demand within 30 days from the date of receipt of EPA's demand for payment unless:

    a.    Colonial has submitted to EPA pursuant to Paragraph 44 of this Consent Decree a written claim that a delay in compliance is caused by a *force majeure* event regarding which EPA has not issued a decision pursuant to Paragraph 45 of this Consent Decree; or

    b.    Colonial has submitted to EPA a written Notice of Dispute pursuant to Paragraph 48 of this Consent Decree, in which case the date that payment of any stipulated penalties is due shall be governed by Paragraph 34 of this Consent Decree.

34.    Penalties shall continue to accrue, as provided in Paragraph 32 of this Consent Decree, during any dispute resolution period, but need not be paid until the following:

    a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to the United States within 30 days of the date of the agreement or date of receipt of EPA's decision; or

    b.    If the dispute is appealed to this Court, and the United States prevails in whole or in part, Colonial shall pay all or that portion of accrued penalties determined by the Court to be owed to the United States within 60 days of the date of the Court's

decision or order.

35. The payment of stipulated penalties shall not affect Colonial's obligation to satisfy all of the requirements of this Consent Decree.

36. In the event that Colonial prevails in a claim subject to dispute resolution under this Consent Decree, Colonial shall not owe any stipulated penalties associated with such claim.

37. Nothing in this Consent Decree shall be construed as limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Colonial's failure to comply with the requirements of this Consent Decree or any applicable statutes or regulations.

38. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, in writing waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.

## XII. PAYMENT AND RELATED MATTERS

39. Colonial shall make the payments described in Section VIII by Fedwire Electronic Funds Transfer (EFT) to the United States Department of Justice, in accordance with current EFT procedures and instructions to be provided to Colonial by the Office of the United States Attorney for the Northern District of Georgia. The payments shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-4367, and shall specify that the payments are made toward CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 31 U.S.C. § 1321(s), § 4304 of Pub. L. No. 101-380, and 26 U.S.C. § 9509(b)(8). Any funds received after 11:00 a.m. Eastern Time

shall be credited on the next business day. Colonial shall submit to the United States, as provided in Section XVI, notice of all payments made pursuant to this Paragraph within 10 days of the date of the payment.

40.   Colonial shall make the payments described in Section XI by EFT to the United States Department of Justice, in accordance with current EFT procedures and instructions to be provided to Colonial by the Office of the United States Attorney for the Northern District of Georgia. The payments shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-4367, and shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury pursuant to 31 U.S.C. § 3302. Any funds received after 11:00 a.m. Eastern Time shall be credited on the next business day. Colonial shall submit to the United States, as provided in Section XVI, notice of all payments made pursuant to this Paragraph within 10 Days of the date of the payment.

41.   If Colonial fails to timely make any payment required pursuant to Section VIII or Section XI, then, commencing on the day after payment is due, Colonial shall be liable to the United States for interest on the unpaid balance at the composite prime rate computed by, and published in the Wall Street Journal on the date that payment was due, and any costs of enforcement and collection incurred pursuant to the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001 *et seq.*

42.   The United States shall be deemed a judgment creditor for purposes of collection of any penalties, interest, and expenses of enforcement and collection pursuant to this Consent Decree. Colonial specifically acknowledges that, pursuant to 26 U.S.C. § 162(f), penalty payments made pursuant to Sections VIII and XI of this Consent Decree shall not be

-27-

deductible for federal tax purposes.

## XIII.  *FORCE MAJEURE*

43.    Colonial's obligation to comply with the requirements of this Decree shall only be

deferred to the extent and for the duration that the delay is caused by *force majeure*.

"*Force majeure*," for purposes of this Consent Decree, is defined as an event arising from

causes beyond the control of Colonial, or of any entity controlled by Colonial, that delays

or prevents the performance of any obligation pursuant to this Consent Decree despite

Colonial's best efforts to fulfill the obligation.  The requirement that Colonial exercise

"best efforts to fulfill the obligation" includes using best efforts to anticipate any

potential *force majeure* event and best efforts to anticipate and address the effects of any

potential *force majeure* event (1) as it is occurring; and (2) following the potential *force*

*majeure* event, such that any delay is avoided or minimized to the greatest extent

possible.  "*Force Majeure*" does not include financial inability to perform an obligation

required by this Consent Decree.

44.    If any event occurs or has occurred that may delay the performance of any obligation

pursuant to this Consent Decree, whether or not caused by a *force majeure* event,

Colonial shall notify orally the Section Chief, North Enforcement and Compliance

Section, RCRA Enforcement and Compliance Branch, EPA Region 4, or his designee,

within 72 hours of when Colonial first knew, or in the exercise of reasonable diligence

under the circumstances should have known, that the event might cause a delay.  Such

oral notification may be given by leaving a voice mail message with the Section Chief,

North Enforcement and Compliance Section, RCRA Enforcement and Compliance

Branch, EPA Region 4, or his designee, if that person is not available.  Within 30 days

thereafter, Colonial shall provide a written notice to EPA explaining the reasons for the

delay, the anticipated duration of the delay, all actions taken or planned to prevent or

minimize the delay, a proposed schedule for implementation of any measures planned to

prevent or mitigate the delay or the effect of the delay, and Colonial's rationale for

attributing such delay to a *force majeure* event if Colonial intends to assert such a claim.

Colonial shall include with any notice all available documentation supporting its claim

that the delay was attributable to a *force majeure* event, which Colonial may supplement

as additional documentation becomes available.  Failure to provide written notice to EPA

within 30 days containing the required information, and including all available

documentation, shall preclude Colonial from asserting any claim of *force majeure* for that

event.  EPA may, in its unreviewable discretion, in writing waive the procedural

requirements of this Paragraph.  Colonial shall be deemed to know of any circumstance

of which Colonial, or any entity controlled by Colonial, knew or should have known.

45.    If EPA agrees that the delay or anticipated delay is attributable to a *force majeure* event,

EPA will extend, in writing to Colonial, the time for performance of the obligations

pursuant to this Consent Decree that are affected by the *force majeure* event for such

time as EPA deems necessary to complete those obligations.  An extension of the time

for performance of the obligations affected by the *force majeure* event shall not, of itself,

extend the time for performance of any other obligation.  If EPA does not agree that the

delay or anticipated delay has been or will be caused by a *force majeure* event, EPA will

notify Colonial in writing of (1) EPA's decision and basis thereof regarding Colonial's

-29-

*force majeure* claim; and (2) the amount of any demand for the payment of stipulated

penalties, pursuant to Paragraph 33 of this Consent Decree, related to the rejected *force*

*majeure* claim.  If EPA agrees that the delay is attributable to a *force majeure* event, EPA

will notify Colonial in writing of the length of the extension, if any, for performance of

the obligations affected by the *force majeure* event.  Any extension of time pursuant to

this Section shall not be valid unless the extension of time is confirmed in writing as

provided in this Paragraph.

46.     The dispute resolution procedures in Section XIV shall apply to any dispute regarding

EPA's decision regarding a *force majeure* claim that Colonial asserts pursuant to

Paragraph 44 of this Consent Decree.  If Colonial elects to invoke the dispute resolution

procedures in Section XIV, it shall do so no later than 30 days from the date of receipt of

EPA's written decision regarding a *force majeure* claim pursuant to Paragraph 45 of this

Consent Decree.

## XIV.   DISPUTE RESOLUTION

47.     The dispute resolution procedures of this Section shall be the exclusive mechanism to

resolve disputes arising under, or with respect to, this Consent Decree.  The procedures

set forth in this Section, however, shall not apply to actions by the United States to

enforce obligations of Colonial that Colonial has not timely disputed in accordance with

this Section.

48.     Any dispute that arises under, or with respect to, this Consent Decree shall in the first

instance be the subject of good faith, informal negotiations between the Parties.  The

period for informal negotiations shall not exceed 21 days from the time the dispute arises,

unless extended by written agreement of the Parties. The dispute shall be considered to have arisen upon receipt of a written Notice of Dispute by one party submitted by the other party.

49.   If informal negotiations are unsuccessful, EPA's position shall control unless Colonial files with the Court a petition to resolve the dispute within 30 days after the conclusion of the informal negotiation period. Within 30 days after receiving a petition filed with the Court pursuant to this Paragraph, EPA may file a response.

50.   The invocation of dispute resolution procedures pursuant to this Section shall not extend, postpone, or affect in any way any obligation of Colonial pursuant to this Consent Decree that is not directly in dispute, unless EPA agrees in writing otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 34 of this Consent Decree. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. If Colonial does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XI.

## XV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

51.   Performance of all of Colonial's obligations pursuant to this Consent Decree, including the payment of civil penalties, resolves any civil claims of the United States against Colonial pursuant to Sections 309 and 311 of the CWA, 33 U.S.C. §§ 1319, 1321, for the discharges alleged or referred to in the Complaint.

52.   Nothing in this Decree shall be construed to create any rights in, or grant any cause of

action to, any person not a Party to this Consent Decree. The United States expressly reserves any and all rights, defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence against any person not a Party hereto.

53.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

54.     This Consent Decree does not resolve, and the United States expressly reserves claims against Colonial related to all other matters including, but not limited to, the following:

a.      claims based on a failure by Colonial to meet a requirement of this Consent Decree;

b.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

c.      criminal liability;

d.      liability pursuant to regulations of the United States Department of Transportation, Research and Special Programs Administration, Office of Pipeline Safety or pursuant to the Pipeline Safety Act, 49 U.S.C. §§ 60101 *et seq.*

e.      liability pursuant to Subchapter I of OPA, 33 U.S.C. §§ 2701-2719; and

f.      liability for any past, current, or future violation of federal or state law not resolved pursuant to Paragraph 51 of this Consent Decree.

55.     In any subsequent administrative or judicial proceeding initiated by the United States for civil penalties or injunctive relief, Colonial shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel,

-32-

claim preclusion, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the resolution of the civil claims resolved pursuant to Paragraph 51 of this Consent Decree.

56.   Colonial hereby covenants not to sue and agrees not to assert any claims in connection with the discharges alleged or referred to in the Complaint, against the United States pursuant to the CWA, OPA, or any other federal law, state law, or regulation including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, or pursuant to any other provision of law.  Except as provided in Paragraph 55, nothing in this Paragraph affects Colonial's ability to assert defenses, if any, in any subsequent proceedings for discharges alleged or referred to in the Complaint.

57.   The United States, by consenting to the entry of this Consent Decree, does not warrant or aver in any manner that Colonial's complete and satisfactory compliance with this Consent Decree will constitute or result in compliance with the CWA or any other federal law or regulation.

## XVI.   NOTICES

58.   Whenever, pursuant to the terms of this Consent Decree, a party is required to submit written notice, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give written notice of a change.  All notices shall be considered effective on receipt, unless otherwise provided.

AS TO THE UNITED STATES:

As to the United States Department of Justice:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Post Office Box 7611
Washington, D.C.  20044-7611
1425 New York Ave., NW
Room 13063
Washington, DC 20005
DOJ #90-5-1-1-4367

United States Attorney
Northern District of Georgia
U.S. Courthouse, Suite 600
75 Spring Street
Atlanta, Georgia 30303

As to the U.S. Environmental Protection Agency:

Regional Counsel
Environmental Accountability Division
Region 4
United States Environmental Protection Agency
Atlanta Federal Center
61 Forsyth Street, S.W.
Atlanta, GA 30303-3104

Section Chief
North Enforcement and Compliance Section
RCRA Enforcement and Compliance Branch
Region 4
United States Environmental Protection Agency
Atlanta Federal Center
61 Forsyth Street, S.W.
Atlanta, GA 30303-3104

AS TO COLONIAL PIPELINE COMPANY:

Kalin Jones, Vice President and General Counsel
Colonial Pipeline Company
1185 Sanctuary Parkway, Suite 100

-34-

P.O. Box 1624 (30009-9934)
Alpharetta, GA 30004-4738

Robert Hogfoss, Esq.
Hunton and Williams
600 Peachtree Street, N.E., Suite 4100
Atlanta, Georgia 30308-2216

## XVII.  RECORD RETENTION/ACCESS TO INFORMATION

59.     In addition to complying with any record-keeping requirements pursuant to applicable

        law and regulations, regardless of any contrary corporate retention policy, Colonial shall

        preserve and retain, during the pendency of this Consent Decree and for a minimum of

        one year after termination of this Consent Decree, all records, documents and information

        in the possession, custody, or control of Colonial, or which come into Colonial's

        possession, custody, or control, that relate in any manner to (1) repairs, modifications, or

        maintenance to the Pipeline System for the specific activities to be monitored by the

        Independent Monitoring Contractor pursuant to Paragraphs 18 and 20; and (2)

        implementation of this Consent Decree.

60.     At any time prior to termination of this Consent Decree, and for one year thereafter,

        Colonial shall provide, subject to Paragraph 62, to the United States, within 45 days of

        the receipt of a written request describing the materials requested and the specific basis

        for the request, all documents and information responsive to the request, within the

        possession, custody, or control of Colonial, related to the implementation of the Consent

        Decree.  Depending on the scope of the request, and pursuant to Paragraph 66, the parties

        may modify the schedules for providing information, upon request.

61.     Colonial may assert business confidentiality claims covering part or all of the documents

-35-

or information provided to the United States pursuant to this Consent Decree to the extent authorized by, and in accordance with, 40 C.F.R. Part 2. Documents or information that EPA determines to be confidential will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Colonial that the documents or information are not confidential pursuant to applicable law, the public may be given access to such documents or information without further notice to Colonial.

62. Colonial may assert that certain documents, records and other information are privileged pursuant to the attorney-client privilege or any other privilege recognized by federal law. If Colonial asserts such a privilege instead of providing documents, it shall provide the United States with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information; and (6) the privilege asserted by Colonial. Colonial will not assert a privilege for Independent Monitoring Contractor quarterly reports or information and data provided to the Independent Monitoring Contractor that forms the basis of the quarterly reports required by the terms of this Consent Decree. If a claim of privilege applies only to a portion of a document, the document shall be provided to the United States in redacted form to mask the privileged information only, and a claim of appropriate privilege, as described above shall be asserted for redacted elements.

63. Nothing in this Consent Decree shall limit the access and information-gathering

authorities and rights of the United States pursuant to any federal law or regulation, including without limitation, related enforcement authorities pursuant to the CWA and OPA.

## XVIII. RETENTION OF JURISDICTION

64.   This Consent Decree shall be considered an enforceable judgment for purposes of post-judgment collection in accordance with the provisions of the Consent Decree, Rule 69 of the Federal Rules of Civil Procedure, and other applicable federal statutory authority.

65.   This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling either of the Parties to apply to this Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIV, and retains jurisdiction beyond the termination of this Consent Decree under Section XXIII to (1) assess any stipulated penalties that may have accrued during the term of the Decree; (2) enforce the requirements of Section XVII; and (3) to assess any stipulated penalties that may have accrued after for violations of any requirement of Section XVII occurring after termination of the Decree.

## XIX.   MODIFICATION

66.     Modifications to the schedules in this Consent Decree may be made without consent of
        the Court by written agreement between Colonial and EPA.  Except as provided in the
        preceding sentence, no material modifications shall be made to this Consent Decree
        without written notification to and written approval by the United States, Colonial, and
        the Court.  Modifications that do not materially alter Colonial's obligations pursuant to
        this Consent Decree may be made without consent of the Court by written agreement
        between the Parties.

## XX.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

67.     This Consent Decree shall be lodged with the Court for a period of at least 30 days for
        public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States
        reserves the right to withdraw or withhold its consent to the Consent Decree if the United
        States becomes aware of facts or considerations that indicate to the United States that the
        Consent Decree is inappropriate, improper, or inadequate.  Colonial agrees not to oppose
        entry of this Consent Decree or to challenge any provision of this Consent Decree unless
        the United States has notified Colonial in writing that it no longer supports entry of the
        Consent Decree.  Colonial consents to entry of this Consent Decree without further
        notice.

68.     If for any reason the Court declines to approve this Consent Decree in the form
        presented, this agreement is voidable at the sole discretion of any Party and the terms of
        the agreement shall not be used as evidence in any litigation.

## XXI.   EFFECTIVE DATE

69.    The effective date of this Consent Decree is that date upon which it is entered by the

Court.

## XXII.  INTEGRATION

70.    This Consent Decree constitutes the final, complete and exclusive Consent Decree and

understanding between the Parties regarding the settlement embodied in this Consent

Decree.  The Parties acknowledge that there are no representations, agreements, or

understandings relating to the settlement other than those expressly contained in this

Consent Decree.

## XXIII. TERMINATION

71.    Not earlier than five years after entry of this Consent Decree, this Decree shall be subject

to termination, in whole or in part, on motion by either Party after Colonial fully satisfies

the requirements of this Consent Decree, except those obligations required pursuant to

Section XVII.  At such time as Colonial believes it has fulfilled all such requirements,

Colonial shall so certify to the United States.  Not earlier than 30 days after such

certification, either party may apply to the Court for termination of the Consent Decree.

The obligations set forth in Section XV and Section XVII shall survive termination of the

Consent Decree as contractual obligations.

## XXIV. SIGNATORIES/SERVICE

72.    The Parties' undersigned representatives certify that they are fully authorized to enter

into the terms and conditions of this Consent Decree and to execute and legally bind such

Party to this document.

73.   Colonial shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service by mail on behalf of Colonial with respect to all matters arising under or relating to this Consent Decree.

## XXV. COSTS

74.   Each party shall bear its own costs and attorneys' fees in the action resolved by this Consent Decree.

Dated this _____ day of _____, 2003.


                                        _____
                                        JACK T. CAMP
                                        UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTIES enter into this Consent Decree relating to United States v. Colonial Pipeline Co., Civil Action No. 1:00-CV-3142 JTC:

FOR THE UNITED STATES OF AMERICA

Date: _____          _____
                                     THOMAS L. SANSONETTI
                                     Assistant Attorney General
                                     Environment and Natural Resources Division
                                     United States Department of Justice

Date: _____          _____
                                     CATHERINE BANERJEE ROJKO
                                     Senior Counsel
                                     DRENAYE L. HOUSTON
                                     Senior Attorney
                                     SCOTT BAUER
                                     AMY GILLESPIE
                                     CHRISTY KING
                                     Trial Attorneys
                                     CHERYL T. ROSE
                                     DOJ Special Attorney
                                     PATRICK M. CASEY
                                     Senior Attorney
                                     United States Department of Justice
                                     Environment and Natural Resources Division
                                     Environmental Enforcement Section
                                     Benjamin Franklin Station
                                     Post Office Box 7611
                                     Washington, D.C.  20044-7611
                                     Telephone:  202-305-0300

THE UNDERSIGNED PARTIES enter into this Consent Decree relating to <u>United States v.</u>
<u>Colonial Pipeline Co.</u>, Civil Action No. 1:00-CV-3142 JTC:

Date: _____      _____
                              SALLY YATES
                              Acting United States Attorney

Date: _____      _____
                              LISA COOPER
                              Assistant U.S. Attorney
                              Northern District of Georgia
                              Bar No. 186165
                              U.S. Courthouse, Suite 600
                              75 Spring Street, SW
                              Atlanta, Georgia 30303
                              Telephone 404-581-6249

THE UNDERSIGNED PARTIES enter into this Consent Decree relating to <u>United States v.</u>
<u>Colonial Pipeline Co.</u>, Civil Action No. 1:00-CV-3142 JTC:

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

Date: _____          _____
                                     JOHN PETER SUAREZ
                                     Assistant Administrator for
                                     Enforcement and Compliance Assurance
                                     United States Environmental Protection Agency

OF COUNSEL:

DAVID DRELICH
Senior Attorney
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

THE UNDERSIGNED PARTIES enter into this Consent Decree relating to United States v. Colonial Pipeline Co., Civil Action No. 1:00-CV-3142 JTC:

Date: _____      _____

                                         J.I. PALMER JR.
                                         Regional Administrator, Region 4
                                         United States Environmental Protection Agency

OF COUNSEL:

GWEN FITZ-HENLEY
Senior Attorney
GREGORY TAN
Assistant Regional Counsel
United States Environmental Protection Agency
Region 4
61 Forsyth Street
Atlanta, GA 30303-3104

THE UNDERSIGNED PARTIES enter into this Consent Decree relating to <u>United States v.</u>
<u>Colonial Pipeline Co.</u>, Civil Action No. 1:00-CV-3142 JTC:

FOR COLONIAL PIPELINE COMPANY:

Date: _____        _____
                                      KALIN JONES
                                      Senior Vice President and General Counsel
                                      Colonial Pipeline Company
                                      1185 Sanctuary Parkway, Suite 100
                                      P.O. Box 1624 (30009-9934)
                                      Alpharetta, Georgia 30004-4738

Agents Authorized to Accept Service on Behalf of Colonial Pipeline Company:

                                      ROBERT HOGFOSS, ESQ.
                                      Hunton & Williams
                                      600 Peachtree Street, N.E., Suite 4100
                                      Atlanta, Georgia 30308-2216
                                      (404) 888-4042

                                      Counsel for Colonial Pipeline Company