FILED
3/8/2018 4:24 PM
58-CV-2018-900207.00
CIRCUIT COURT OF
SHELBY COUNTY, ALABAMA
MARY HARRIS, CLERK

## IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA

THE STATE OF ALABAMA, *ex rel.* )
STEVE MARSHALL, )
ATTORNEY GENERAL, and THE )
ALABAMA DEPARTMENT OF )
ENVIRONMENTAL MANAGEMENT )
     )
    Plaintiffs, )
     )
v. )      58-CV-2018-_____
     )
COLONIAL PIPELINE COMPANY, )
     )
    Defendant. )
     )

## COMPLAINT

The State of Alabama ("State") and the Alabama Department of Environmental Management ("ADEM" or "Department") file this Complaint against Colonial Pipeline Company ("Colonial") and allege as follows:

### NATURE OF THE ACTION

1.    This is a civil action against Colonial for violations of the Alabama Water Pollution Control Act ("AWPCA"), the Alabama Air Pollution Control Act ("AAPCA"), the Alabama Environmental Management Act ("AEMA") and certain regulations promulgated under each statute, stemming from five separate spills of liquid petroleum products from Colonial's pipeline system in the State of Alabama. The State and ADEM seek the recovery of civil penalties and compensatory damages from Colonial for alleged violations of law in the State of Alabama.

### THE PARTIES

2.    Plaintiff, the State of Alabama, by and through the authority of Attorney General Steve Marshall, is authorized by Ala. Code §§ 22-22A-5(1), 22-22-9(m), 22-22A-5(12), and 22-



EXHIBIT
D

22A-5(18) to enforce the provisions of the Alabama AWCPA and the AAPCA. Specifically, Ala. Code § 22-22A-5(18)b. authorizes the Attorney General to bring a civil action on behalf of the State for unpermitted discharges and emissions of pollutants in violation of said Acts. Ala. Code § 22-22A-5(18)c. authorizes ADEM and the State to recover civil penalties for unpermitted discharges and emissions of pollutants, providing for a maximum of $25,000.00 per violation. The Attorney General is authorized by Ala. Code § 36-15-12 to institute and prosecute, in the name of the State, all civil actions and other proceedings necessary to protect the rights and interests of the State.

3.      Plaintiff, ADEM, is a duly constituted department of the State of Alabama pursuant to Ala. Code §§ 22-22A-1, *et seq.*  Pursuant to Ala. Code § 22-22A-4(n), ADEM is the State agency responsible for the promulgation and enforcement of water pollution control regulations in accordance with the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* ("Clean Water Act").  ADEM is also authorized to administer and enforce the provisions of the AWPCA, Ala. Code §§ 22-22-1, *et seq.*  Pursuant to Ala. Code § 22-22A-4(n), the Department is the State air pollution control agency for the purposes of the federal Clean Air Act, 42 U.S.C. §§ 7401 to 7671q, *as amended.*  In addition, ADEM is authorized to administer and enforce the provisions of the AAPCA, Ala. Code §§ 22-28-1, *et seq.*

4.      Defendant Colonial is a corporation formed under the laws of the State of Delaware and the Commonwealth of Virginia with its principal place of business in Alpharetta, Georgia. Colonial is a "person" within the meaning of Ala. Code §§ 22-22-1(b)(7), 22-28-2(4), and 22-22A-3(7). Colonial owns and operates an interstate pipeline system that transports refined petroleum products in and through Alabama. Colonial is registered to do business in Alabama, does business in Alabama, and has a registered agent in Alabama.

## JURISDICTION AND VENUE

5.      This court has jurisdiction over the subject matter herein and the Parties to this action pursuant to Ala. Code § 22-22A-5(18)b.  The Complaint states claims pursuant to Ala. Code §§ 22-22-1, *et seq.*, 22-28-1, *et seq.*, and 22-22A-1, *et seq.* for injunctive relief and for the assessment of civil penalties.  The State and ADEM are authorized to bring this suit under Ala. Code § 22-22A-5.

6.      Venue is proper under Ala. Code § 22-22A-5(17)-(19).

## GENERAL ALLEGATIONS

### *Background*

7.      Defendant operates an interstate refined petroleum products pipeline system in the United States. The main pipelines in this system include a 36-inch pipeline ("Line 01") and a 40-inch pipeline ("Line 02"). In the State of Alabama, Line 01 and Line 02 generally run parallel to one another within the same Right of Way.

8.      As alleged with more particularity in Paragraphs 9 through 45 below, five separate releases occurred from line pipe along Colonial's pipeline system in the State of Alabama in 2016 and 2017. Prior to the 2016 and 2017 releases, Plaintiffs are not aware of a release having occurred from line pipe along Colonial's pipeline system in the State of Alabama since at least 2011.

### *Double Oak*

9.      On or about January 30, 2016, a leak from Line 02 released approximately 3.0 barrels of diesel fuel near Double Oak Mountain, near Yeager Farm Road, in Pelham, Shelby County, Alabama (the "Double Oak Incident").

10.     The diesel fuel from the Double Oak Incident impacted the environment.

11.     There are no known impacts to wildlife from the Double Oak Incident.

12.     Colonial conducted emergency response activities upon discovery of the spill. Due to these response efforts, approximately 2.9 barrels of the spilled diesel fuel were recovered.

13.     On or about February 2, 2016, Line 02 was permanently repaired and resumed normal operations.

*Heflin*

14.     On or about April 15, 2016, a leak from Line 01 released approximately 7.14 barrels of gasoline in Heflin, Alabama, which is located in Cleburne County, Alabama (the "Heflin Incident").

15.     The gasoline from the Heflin Incident impacted the environment.

16.     There are no known impacts to wildlife from the Heflin Incident.

17.     Colonial conducted emergency response activities upon discovery of the spill. Due to these response efforts, approximately 6.9 barrels of the spilled gasoline were recovered.

18.      On or about April 17, 2016, Line 01 was permanently repaired and resumed normal operations.

*CR-91*

19.     On or about September 9, 2016, a leak from Line 01 released approximately 7,370 barrels of gasoline near County Road 91 near Pelham, Alabama in Shelby County, Alabama (the "CR-91 Incident").

20.     The gasoline from the CR-91 Incident impacted the environment. Specifically, gasoline from Line 01 spilled onto the Right of Way and flowed over land through a ravine and then into a sediment pond treatment system used in an existing surface mining operation. The gasoline caused a film, sheen, and/or discoloration on or of at least one of the three ponds in the sediment pond treatment system.

21.     There are no known impacts from the CR-91 Incident to the Cahaba River.

22.     Wildlife impacted in the CR-91 Incident included ten (10) mammals, nineteen (19) reptiles, six (6) birds, one (1) amphibian, and multiple fish.

23.     The nearby Cahaba River Wildlife Management Area ("WMA"), established, operated, and maintained by the Alabama Department of Conservation and Natural Resources ("ADCNR") for outdoor recreational use, was closed following the CR-91 Incident.

24.     As a direct result of the closure of the WMA, the ADCNR and the State of Alabama incurred damages, including the loss of hunting license revenue and federal matching revenue.

25.     Colonial's response action to the CR-91 Incident resulted in significant damage to access roads located at or near the WMA, owned and maintained by the State of Alabama and ADCNR.

26.     The WMA re-opened to the public on or around December 7, 2017.

27.     Colonial, under the supervision of and in coordination with certain governmental agencies and various contractors, conducted complex and coordinated emergency response efforts upon discovery of the spill. Colonial's response efforts included constructing an underflow dam to push the spilled product towards the pond system for recovery; plugging the culvert connecting two of the existing ponds to prevent product or contamination from migrating from one pond into the other; flushing the ravine and aerating the ponds; and using absorbents to remove spilled product. At the height of emergency response activities, Colonial had approximately 800 responders on site and in total, the CR-91 Incident responders logged approximately 180,000 hours.

28.     Due to these response efforts, approximately 2,111 barrels of the spilled gasoline were recovered.

29.     On or about September 22, 2016, construction of a bypass around the damaged portion of Line 01 was completed, and Line 01 resumed operation.

30.     On or about September 29, 2016, Colonial completed the excavation of the segment of Line 01 involved in the CR-91 Incident.

*CR-251*

31.     On or about October 31, 2016, a contractor performing work on the pipeline near County Road 251 near Pelham, Alabama in Shelby County, Alabama struck and damaged Line 01.

32.     The strike caused Line 01 to release approximately 4,444 barrels of gasoline (the "CR-251 Incident").

33.     The gasoline from the CR-251 Incident impacted the environment.

34.     As part of its response action to the CR-251 Incident, Colonial deployed containment and absorbent boom at three different locations along the Cahaba River on November 1, 2016. Colonial removed the boom from the Cahaba River on November 5, 2016.

35.     Colonial's deployment, service, and retrieval of the containment booms from the Cahaba River caused the loss of wildlife-- specifically, a significant number of gastropods (snails) of several different species.

36.     There are no other known impacts from the CR-251 Incident to the Cahaba River.

37.     Colonial, under the supervision of and in coordination with certain governmental agencies and various contractors, conducted complex and coordinated emergency response efforts upon discovery of the release. For the safety of the public, a portion of the released product was consumed in a controlled burn that was authorized by applicable authorities.

38.     On or about November 5, 2016, the controlled fire ceased burning.

39.     On or about November 6, 2016, Line 01 was permanently repaired and resumed normal operations.

### CR-459

40.     On or about July 20, 2017, Colonial observed a gasoline odor while performing maintenance work on Line 01 near County Road 459 in Cleburne County, Alabama (the "CR-459 Incident").

41.     Colonial estimated that 11 barrels of gasoline had been released in the CR-459 Incident.

42.     The gasoline from the CR-459 Incident impacted the environment.

43.     There are no known impacts to wildlife from the CR-459 Incident.

44.     Colonial conducted emergency response activities upon discovery of an odor from the released product.

45.     On or about July 20, 2017, Line 01 was permanently repaired and resumed normal operations.

## COUNT ONE

### *Civil Penalties under the Alabama Water Pollution Control Act*

46.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

47.     Section 22-22-9(i)(3) of the AWPCA provides that "[e]very person, prior to discharging any new or increased pollution into any waters of this state, shall apply to the commission in writing for a permit and must obtain such permit before discharging such pollution."

48.   Section 22-22A-5 of the AEMA authorizes the Alabama Environmental Management Commission to adopt regulations to promote the purposes of the AWPCA.

49.   Regulations promulgated under the AWPCA prohibit "[t]he discharge of fluids and/or pollutants to ground water and/or to soils, which may result in a discharge of fluids and/or pollutants to ground water which is not authorized and in compliance with a permit issued under the provisions of this chapter." ADEM Admin. Code r. 335-6-8-.05(1)(a).

50.   A discharge of petroleum products or other pollutants from Colonial's pipeline and/or actions that results in new or increased pollution to groundwater constitutes a violation of Section 22-22-9(i)(3) of the AWPCA. Pursuant to the AEMA, each day that such violation continues can be considered to be a separate, continuing violation. For each such violation, and for each day that each such violation continues, Defendant is liable to the State and ADEM for a civil penalty of up to $25,000.00.

51.   Section 22-22-9(i)(4) of the AWPCA provides that "[a]ny and all pollution" is a public nuisance.

52.   A discharge of petroleum products or other pollutants from Colonial's pipeline and/or actions that results in new or increased pollution in a water of the State, as set out above, creates a public nuisance and constitutes a violation of Section 22-22-9(i)(4) of the AWPCA. Pursuant to the AEMA, each day that such violation continues can be considered to be a separate, continuing violation. For each such violation, and for each day that each such violation continues, Defendant is liable to the State and ADEM for a civil penalty of up to $25,000.00.

53.   Regulations promulgated under the AWPCA establish minimum standards applicable "to all State waters, at all places and at all times, regardless of their uses." ADEM Admin. Code r. 335-6-10-.06.

54.     Pursuant to ADEM Admin. Code r. 335-6-10-.06(a), "State waters shall be free from substances attributable to sewage, industrial wastes or other wastes that will settle to form bottom deposits which are unsightly, putrescent or interfere directly or indirectly with any classified water use."

55.     Pursuant to ADEM Admin. Code r. 335-6-10-.06(b), "State waters shall be free from floating debris, oil, scum, and other floating materials attributable to sewage, industrial wastes or other wastes in amounts sufficient to be unsightly or interfere directly or indirectly with any classified water use."

56.     Pursuant to ADEM Admin. Code r. 335-6-10-.06(c), "State waters shall be free from substances to sewage, industrial wastes or other wastes in concentrations or combinations which are toxic or harmful to human, animal or aquatic life to the extent commensurate with the designated usage of such waters."

57.     A discharge of petroleum products or other pollutants from Colonial's pipeline and/or actions that result in new or increased pollution into waters of the State, as set out above, which exceeds the minimum standards, constitutes a violation of ADEM Admin. Code r. 335-10-.06(a)-(c). Pursuant to the AEMA, each day that such violation continues can be considered to be a separate violation. For each such violation, and for each day that each such violation continues, Defendant is liable to the State and ADEM for a civil penalty of up to $25,000.00.

## COUNT TWO

### Damages under the Alabama Environmental Management Act
### and the Alabama Water Pollution Control Act

58.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

-9-

59.    Section 22-22A-5(17) of the AEMA makes Defendant liable for, and authorizes the ADEM to commence a civil action to recover, "…the actual costs reasonably incurred by the department to prevent, minimize or abate any adverse effect on air, land, or water resources which results or may result from such violation…."

60.    Section 22-22-9(m) of the AWPCA makes Defendant liable for, and authorizes the ADEM to commence a civil action to recover, "damages for pollution of waters of the state, including, but not limited to, any reasonable costs to prevent, minimize or clean up any damage resulting from pollution resulting from the wrongful act, omission or negligence of a person. . . ."

61.    Section 22-22-9(n) of the AWPCA provides that any person who violates the AWPCA and in doing so, causes the death of wildlife, is liable for damages necessary to replenish such wildlife.

62.    The Defendant caused pollutants to be discharged into waters of the State.

63.    Defendant's violations caused the death of wildlife.

64.    Defendant is liable to the State and ADEM for reasonable costs to prevent, minimize, or clean up any damage resulting from Defendant's actions. Defendant is liable to the State for damages necessary to replenish the wildlife impacted by Defendant's violations.

## COUNT THREE

### *Civil Penalties under the Alabama Air Pollution Control Act*

65.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

66.    Section 22-22A-5 of the AEMA authorizes the Alabama Environmental Management Commission to adopt regulations to promote the purposes of the AAPCA.

67.     ADEM Admin. Code r. 335-3-1-.08, promulgated pursuant to the AAPCA requires that, "[n]o person shall permit or cause air pollution . . . by the discharge of any air contaminant for which no ambient air quality standards have been set under Rule 335-3-1-.03(1)."

68.     ADEM Admin. Code r. 335-3-14-.01(1)(b), promulgated pursuant to the AAPCA requires that   "[b]efore any article, machine, equipment, or other contrivance described in subparagraph (a) of this paragraph may be operated or used, authorization shall be obtained from the Director in the form of an Air Permit. No Permit shall be granted for any article, machine, equipment or contrivance described in subparagraph (a) of this paragraph, constructed or installed without notification as required by subparagraph (a) of this paragraph, until the information required is presented to the Director and such article, machine, equipment or contrivance is altered, if necessary, and made to conform to the standards established by the Department."

69.     Defendant's un-authorized and un-permitted discharge and emission of petroleum products or other pollutants into the environment, plus in situ burning of petroleum products, has caused air pollution emissions in violation of the AAPCA and ADEM Admin. Code r. 335-3-1-14-.01 and -.08. Pursuant to the AEMA, each day that such violation continues can be considered to be a separate and additional violation. For each such violation, and for each day that each such violation continues, Defendant is liable to the State and ADEM for a civil penalty of up to $25,000.00.

## PRAYER FOR RELIEF

WHEREFORE, the State and ADEM request that this Court:

A.     Take jurisdiction over this matter.

B.     Adjudge and declare that Defendant has caused or allowed unauthorized discharges of pollutants into Waters of the State.

C.    Adjudge and declare that Defendant has caused or allowed unauthorized emissions of air pollutants into the atmosphere.

D.    Order the Defendant to take such actions to address the unauthorized discharge of pollutants to the Waters of the State.

E.    Order the Defendant to take such actions to address the unauthorized emission of air pollutants into the atmosphere.

F.    Order Defendant to provide to the State and ADCNR restitution for all damages incurred from the closure of the Cahaba River WMA, including the costs of road repair at or near the Cahaba River WMA, and for the loss of wildlife caused by Colonial's response action to the CR-251 Incident.

G.    Assess a civil penalty against Defendant and in favor of Plaintiffs pursuant to Ala. Code § 22-22A-5(17) and (18) for violations of the AWPCA, the AAPCA, and applicable regulations alleged in this Complaint.

H.    Order such other relief that the Court deems proper.

DONE this 8th day of March, 2018.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL

/s/ Robert D. Tambling
Robert D. Tambling (TAM001)
*Assistant Attorney General*

/s/ Corey L. Maze
Corey L. Maze (MAZ003)
*Special Deputy Attorney General*

ADDRESS OF COUNSEL:
Office of Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
rtambling@ago.state.al.us
cmaze@ago.state.al.us

STEVE MARSHALL
ATTORNEY GENERAL

/s/ Thomas L. Johnston
Thomas L. Johnston (JOH081)
*Assistant Attorney General and*
*General Counsel*

/s/ S. Shawn Sibley
S. Shawn Sibley (SIB002)
*Assistant Attorney General and*
*Associate General Counsel*

ADDRESS OF COUNSEL:

Alabama Department of Environmental Management
Office of General Counsel
Post Office Box 301463
Montgomery, Alabama  36130-1463
(334) 271-7855
tlj@adem.alabama.gov
ssibley@adem.alabama.gov