IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALLEY CREEK LAND & TIMBER, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Case No. 2:19-CV-970-KOB |
| COLONIAL PIPELINE COMPANY, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

As anyone who has tried to make guacamole with an unripe avocado can tell you, sometimes doing something too early is just as bad as doing something too late. An avocado that has not yet ripened will leave even the best cooks with a guacamole that is unappealing in both texture and taste. However, savvy chefs can avoid this culinary catastrophe with the addition of one extra ingredient: patience. In this case, the plaintiff did not exercise patience. As a result, this case is just like an avocado that will ruin an otherwise perfect guacamole—unripe.

This matter comes before the court on Defendant Colonial Pipeline Company's motion to dismiss Plaintiff Valley Creek Land & Timber, LLC's complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 15). In its complaint, Valley Creek alleges that a gasoline spill from one of Defendant Colonial Pipeline Company's gasoline pipelines contaminated Valley Creek's property and diminished the property's value. (Doc. 1). Colonial raises multiple arguments for dismissing the complaint, including an argument that the case should be dismissed as unripe because of ongoing contractual mitigation efforts. (Doc. 15). For the reasons stated below, the

court will GRANT Colonial's motion to dismiss without prejudice because Valley Creek's case has not yet become ripe for adjudication.

## I. Standard of Review

Colonial moves to dismiss Valley Creek's complaint under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). However, a dismissal on ripeness grounds more properly falls under the umbrella of a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Reahard v. Lee Cty.*, 30 F.3d 1412, 1415 (11th Cir. 1994) (stating that the issue of ripeness goes to whether a district court has subject matter jurisdiction). But, the choice of which rule to apply makes little practical difference because the court applies a standard of review akin to that of Rule 12(b)(6) when a defendant facially attacks subject matter jurisdiction under Rule 12(b)(1). *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

The Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

As reflected in this Memorandum Opinion, documents attached to the pleadings influence the considerations in this case. In considering a Rule 12(b) motion, the Federal Rules of Civil Procedure generally limit the court to assessing the face of the complaint and its attachments. Fed. R. Civ. P. 12(b); *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005). However, the court may also consider, without converting the motion to dismiss to a motion for summary

judgment, documents attached to a motion to dismiss that are central to the complaint and undisputed in their authenticity. *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006); *Day*, 400 F.3d at 1276. The documents in this case are all either attached to the complaint or central to the complaint, and neither party disputes their authenticity. Therefore, the court can consider the documents without converting Colonial's motion to dismiss to a motion for summary judgment.

**II.     Factual Background**

Valley Creek, a land and timber investment company, states in its complaint that it owns more than 5,000 acres of property in Shelby County, Alabama, which it bought as an investment ultimately intended for residential and commercial development. (Doc. 1). Colonial has a gasoline pipeline that runs near Valley Creek's property. On September 9, 2016, a mining inspector discovered that Colonial's pipeline had sprung a leak. The leak released approximately 300,000 gallons of gasoline onto Valley Creek's property.

After the leak, multiple federal, state, and local agencies engaged in a response effort. The Pipeline and Hazardous Materials Safety Administration ("PHMSA")—a federal agency overseeing pipelines—issued a corrective action order to Colonial. The corrective action order enumerated the details of the leak and required Colonial to, among other things, take immediate action to address the leak, complete an extensive failure analysis, and submit quarterly reports to the agency. (Doc. 1-1). The attachments to Colonial's motion to dismiss show that PHMSA later issued an amended corrective action order to Colonial, which—in addition to the requirements from the previous order—requires Colonial to implement an approved remedial work plan for the pipeline that identifies potential and existing threats. (Doc. 15-2 at 9). Additionally, Colonial has submitted and continues to submit environmental testing analysis to

3

the Alabama Department of Environmental Management ("ADEM"). (Doc. 15-3 at 8-12; Doc. 15-6).

On February 27, 2017, Colonial and Valley Creek entered into an "Access Agreement." (Doc. 15-7). The Access Agreement sets forth a framework for Colonial, under the supervision of ADEM and other regulatory agencies, to perform remediation efforts on Valley Creek's land that was affected by the gasoline leak. The Access Agreement binds the parties for six years or until Colonial receives a no-further-action letter from ADEM, whichever comes first. A no-further-action letter from ADEM would indicate that the remediation efforts had reached ADEM's standards for environmental safety. If Colonial has not finished the remediation in six years and ADEM has not issued a letter, the Access Agreement contains two one-year options to extend the agreement that include further compensation for Valley Creek. The Access Agreement states that Colonial shall provide full compensation to Valley Creek for the use of the property, "excluding only an additional obligation for Colonial to pay [Valley Creek] for damage to the Property and associated loss in value of the Property should same exist after the Work and any additional work on the property not covered by this Agreement." (*Id.* at 4).

The parties do not dispute that the Access Agreement is still in effect and that Colonial's remediation work is ongoing.

In October 2017, the parties also entered into a "Tolling Agreement" related to Colonial's remediation efforts. (Doc. 1-6). The Tolling Agreement states that Colonial is conducting the work covered in the Access Agreement in coordination with ADEM, but "the full extent of the contamination and remediation that may be needed to correct or contain it is still being investigated." (*Id.* at 2). The Tolling Agreement notes Valley Creek's desire to avoid litigation "at the current time," but states that Valley Creek has not waived its claims related to the

4

gasoline leak and that the parties agree to toll the statute of limitations for those claims until 60 days after the expiration of the Access Agreement. The Tolling Agreement also states that the agreement terminates if Valley Creek files suit during the tolling period.

In its complaint, Valley Creek primarily contends that the gasoline spill damaged its property by contaminating it with toxic, carcinogenic chemicals. Valley Creek asserts that the contamination has not been remediated and that the remediation efforts have further damaged the property. Overall, Valley Creek asserts that the damage from the spill has diminished the value of the property and will prevent the property from being put to its best, most valuable use.

Valley Creek raises claims for relief for negligence, wantonness, inverse condemnation, and nuisance—all of which hinge, at least in part, on the alleged diminution in value of the property. Valley Creek also requests injunctive relief in the form of a "remaining life study," in which an independent expert would assess the longevity of Colonial's pipeline, issue instructions about pipeline maintenance, and receive annual reports from Colonial about the pipeline. In addition to the remaining life study, Valley Creek seeks compensatory damages, punitive damages, and attorney's fees.

### III. Discussion

In its motion to dismiss, Colonial argues, among other things, that this suit should not have been filed, "at least not yet." Colonial asserts that the Access Agreement contractually bars Valley Creek from pursuing damages during the remediation and that Valley Creek's claims are not ripe until the remedial work is complete. Specifically, regarding ripeness, Colonial argues that Valley Creek's claims are contingent upon future events because of the ongoing nature of the remediation efforts.

In response, Valley Creek argues that its suit is not premature because the Tolling Agreement specifically contemplates filing suit during the tolling period and because, according to Valley Creek, the Access Agreement only makes Valley Creek whole for damages caused by the remediation work. (Doc. 21). Further, Valley Creek argues that it filed its suit at the appropriate time because all of its claims relate to a permanent injury that already occurred—the spill of gasoline onto the property and the resulting diminution in its value. Valley Creek states that whether the damage caused by Colonial can be undone is a factual matter that cannot be resolved at the motion-to-dismiss stage.

Colonial replies that the Access Agreement and the Tolling Agreement both make clear that remediation is ongoing and that any claims for relief must be assessed after the remediation work is complete. (Doc. 25). Colonial argues that Valley Creek's claims have not ripened because the alleged injury is contingent on the results of the ongoing remediation efforts. Colonial elaborates that no court can determine the value or presence of any injuries until the conclusion of remediation.

The doctrine of ripeness, which originates from the Constitution's Article III requirement that courts only hear actual cases and controversies, presents a "threshold jurisdictional question of whether a court may consider the merits of a dispute." *Elend v. Basham,* 471 F.3d 1199, 1204–05 (11th Cir. 2006). In addition to jurisdictional considerations, ripeness also involves judicial prudence; even when the case meets the constitutional minimum for jurisdiction, "prudential considerations may still counsel judicial restraint." *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir. 1997). Courts assess ripeness on a claim-by-claim basis. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019).

Ripeness is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Wollschlaeger v. Governor*, *Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003)). The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of merely potential or abstract disputes. *Digital Properties, Inc.*, 121 F.3d at 589.

When examining ripeness, the court considers "whether this is the correct *time* for the complainant to bring the action." *Wilderness Soc. v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). The court must determine whether there is "sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir. 1995). To determine whether a dispute is "concrete enough to be ripe," courts assess "(1) the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding court consideration." *Wollschlaeger*, 848 F.3d at 1304 (quoting *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808).

In this case, Valley Creek has not brought its claim at the right time. *See Wilderness Soc.*, 83 F.3d at 390. All of Valley Creek's damages claims lack sufficient concreteness for adjudication and remain prudentially unripe. *See Cheffer,* 55 F.3d at 1524; *Digital Properties, Inc.*, 121 F.3d at 589. Valley Creek's complaint—with the exception of its claim for injunctive relief—focuses on the lingering effects of the gasoline spill on the property, a condition Colonial has undertaken to remediate via the Access Agreement. *See generally* (Doc. 1). Specifically, in

all of its claims Valley Creek alleges either that (1) the property's value has diminished because of "physical contamination and pollution, environmental stigma from physical contamination and pollution, the creation of harmful conditions to human health and the environment, and continuous nuisance," (2) it cannot use the property for its best use due to damage, or (3) both. (*Id.* at 12, 16–18). However, as stated in the Tolling Agreement, the full extent of contamination and necessary remediation remains unknown. (Doc. 1-6 at 2). Further, Colonial's contractually mandated remediation efforts under the Access Agreement—which will necessarily affect the contamination of the property and the ability to put the property to its "best use"—remain ongoing. (Doc. 15-7).

Because of the ongoing nature of Colonial's remediation efforts, Valley Creek's damages claims do not meet the first prong of the concreteness analysis: fitness for judicial decision. *See Wollschlaeger*, 848 F.3d at 1304. Colonial is contractually bound to remediate the damage to at least part of Valley Creek's property up to at least the standards mandated by the relevant regulatory agencies. From the face of the pleadings, it appears that Colonial could possibly remediate all of the damage from the gasoline spill such that no devaluation or limited use of the property would occur. Further, the Access Agreement compensates Valley Creek for the time spent on remediation and for any property damage caused by those efforts.

Thus, despite the occurrence of the original gasoline spill—which Valley Creek frames as a concrete injury that has already occurred—some questions remain regarding the extent to which Valley Creek suffered an actual injury resulting in damages that could justify liability. Whether injury and damages exist in this case depends on contingent future events that may not occur as anticipated, namely, Colonial's remediation efforts. *Texas*, 523 U.S. at 300. As such, the injury required under the Article III case or controversy requirement remains "potential or

abstract" and unfit for adjudication. *See Cheffer,* 55 F.3d at 1524; *Digital Properties, Inc.*, 121 F.3d at 589.

No Supreme Court or Eleventh Circuit caselaw exists that clearly aligns with the facts in this case, but some analogous caselaw can help illuminate the abstractness of Valley Creek's claims for damages. In a bankruptcy case, the Eleventh Circuit held that the case was not ripe because the facts did not guarantee that the plaintiffs would suffer actual injury. *In re Jacks*, 642 F.3d 1323, 1332 (11th Cir. 2011). In that case, the plaintiffs filed suit over bankruptcy-related fees that had accrued in the plaintiffs' account but that did not actually have to be paid until later in the plaintiffs' bankruptcy proceedings. *Id.* at 1326–27, 1332. The Eleventh Circuit found that the case was unripe because, due to uncertainties in the bankruptcy proceedings, it was unclear whether the plaintiffs would actually have to pay the fees.

Despite the different factual contexts, the alleged injury in this case has similarities to the fees at issue in *Jacks*. In *Jacks*, the alleged injury of the accrual of fees had occurred, but the court essentially found that actual injury might not exist because the fees might not have any practical impact. *See id.* Likewise, in this case the alleged injury of the gasoline spill has occurred, but—because of the ongoing, contractually mandated remediation efforts—the practical impact of the alleged injury remains unclear.

While the Eleventh Circuit has not decided any cases factually similar to the case at hand, two unreported cases from Indiana district courts provide further clarification of the fitness of Valley Creek's damages claims for decision. Both cases deal with contamination of property with hazardous chemicals and ongoing remediation efforts, and both cases address the issue of whether claims should be dismissed as unripe because of the ongoing nature of remediation efforts. *Stoll v. Kraft Foods Glob., Inc.*, No. 1:09-CV-0364-TWP-DML, 2010 WL 3702359, at

*1, *8 (S.D. Ind. Sept. 6, 2010); *Allgood v. Gen. Motors Corp.*, No. 102CV1077DFHTAB, 2006 WL 2669337, at *1–2, *36 (S.D. Ind. Sept. 18, 2006). *Stoll* came before the Indiana district court on a motion to dismiss, while *Allgood* came before the court on a motion for summary judgment.

Although *Stoll* involved a motion to dismiss, the instant case actually shares more similarities with *Allgood*. In *Allgood*, the court found that the plaintiff's claims for "damages for reduced property values resulting from the stigma caused by the pollution" were not ripe because the plaintiffs had not presented any evidence that would allow a jury to find stigma or damages "other than by speculation" before the remediation had been completed. *Allgood v. Gen. Motors Corp.*, No. 102CV1077DFHTAB, 2006 WL 2669337, at *2. In the instant case, which also deals with reduced property values, remediation is ongoing and is contractually guaranteed; thus, as in *Allgood*, any conclusions about stigma, damages, or the property value would necessarily be based solely on speculation.

In *Stoll*, the court entertained a similar argument that the plaintiffs' damages claims should be dismissed on ripeness grounds because damages could not be calculated with certainty, as remediation remained incomplete. *Stoll v. Kraft Foods Glob., Inc.*, No. 1:09-CV-0364-TWP-DML, 2010 WL 3702359, at *8. The court rejected that argument because it had "yet to hear a shred of evidence about the concreteness or speculativeness of Plaintiffs' damages." *Id.* at *9. The court finds that *Stoll* can be distinguished from the case at hand because the record in this case already contains evidence—in the form of a contractual agreement requiring remediation—that Valley Creek's damages are speculative.

Because the question of whether the damages in this case are speculative can be resolved based on the pleadings, Valley Creek cannot prevail on its argument that the remediation-of-

10

damages issue presents a question of fact inappropriate for a motion to dismiss. While it is true that the extent to which Colonial will be able to remediate the damages presents a factual question that the court could not resolve at this stage, the court does not arrive at that factual question; the apparent speculativeness of the damages, and hence the fitness of the case for judicial decision, acts as a threshold jurisdictional issue. So, this case, like *Allgood*, remains sufficiently speculative that it does not clear the ripeness hurdle of being prudentially fit for judicial decision. *See Wollschlaeger*, 848 F.3d at 1304.

An analysis of the hardship to Valley Creek also supports the dismissal on ripeness grounds of Valley Creek's claims for damages. *See id.* The hardship prong in ripeness review "asks about the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal." *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010). In considering hardship, the court considers whether withholding a decision would cause "significant practical harm" to the plaintiff's interests. *Pittman v. Cole*, 267 F.3d 1269, 1281 (11th Cir. 2001).

In this case, Valley Creek cannot show practical, economic hardship based on this court's decision to withhold review of this case until the completion of the contractually-mandated remediation of the property. Pursuant to the Access Agreement, Colonial must monetarily compensate Valley Creek for its use of the property during the remediation efforts and will continue to do so going forward. (*See* doc. 15-7). Further, the remediation efforts should improve the value of Valley Creek's property over time. So, Valley Creek cannot show economic hardship arising from this court's decision to decline to consider this case at this time.

However, the hardship analysis also takes into consideration whether the plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent

and more certain." *Pittman*, 267 F.3d at 1281 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998)).  In this case, the applicable statute of limitations complicates whether Valley Creek can bring its legal challenge at a later, more appropriate time.  Valley Creek's act of filing the instant suit terminated the Tolling Agreement that suspended the statute of limitations.  (*See* doc. 1-6).  Under Alabama law, the statute of limitations for Valley Creek's claims for damages runs after two years.  Ala. Code § 6-2-38; *Long v. City of Athens*, 24 So. 3d 1110, 1119 (Ala. Civ. App. 2009).  The gasoline spill occurred in September 2016, so, absent any tolling, the statute of limitations has already lapsed.

Where the statute of limitations would bar subsequent suit, a dismissal without prejudice effectively becomes a dismissal with prejudice. *Justice v. United States*, 6 F.3d 1474, 1482 & n. 15 (11th Cir. 1993).  However, the circumstances in this case do not clearly indicate whether the statute of limitations would in fact bar a subsequent suit.  As an initial matter, Colonial stated in its motion to dismiss that "the parties could agree again to toll the statutes of limitation applicable to Valley Creek's claims."  (Doc. 15-1 at 16).  Further, because of the ripeness issues in this case, Valley Creek could be eligible for equitable tolling of the statute of limitations.  *See Weaver v. Firestone*, 155 So. 3d 952, 958 (Ala. 2013) (stating that equitable tolling of the statute of limitations is appropriate in extraordinary circumstances that the claimant cannot avoid or control).  Finally, the statute of limitations would not bar Valley Creek from seeking relief for any damages to the property by bringing a contractual action based on the Access Agreement.  So, multiple avenues exist for Valley Creek to potentially bring its claims again at a more appropriate time.

Additionally, the existence of the now-terminated Tolling Agreement in this case creates an equitable issue.  Colonial and Valley Creek's Tolling Agreement effectively suspended the

statute of limitations on Valley Creek's claims until after the expiration of the Access Agreement. (Doc. 1-6). However, the Tolling Agreement also clearly stated that it would terminate if Valley Creek filed suit while remediation efforts were ongoing and the Access Agreement was still operative. Valley Creek created any potential statute-of-limitations issues when it filed suit before Colonial finished its remediation efforts, thereby terminating the Tolling Agreement. Therefore, any hardship relating to the statute of limitations is at least partially self-imposed. Valley Creek's responsibility renders this court reluctant to place undue weight on any potential statute-of-limitations issue when considering Valley Creek's hardship. Because a dismissal without prejudice will not create economic hardship for Valley Creek or clearly bar the filing of another suit at an appropriate time, the hardship analysis does not foreclose dismissal of this case on ripeness grounds.

Considerations of both fitness and lack of hardship counsel against deciding the instant case at this time. *Wollschlaeger*, 848 F.3d at 1304. At the heart of the matter lies the fact that Valley Creek simply did not bring its claim at the right time and asks the court to speculate on a dispute that remains abstract. *Wilderness Soc.*, 83 F.3d at 390; *Digital Properties, Inc.*, 121 F.3d at 589. A decision by the court at this time could lead to an outcome that, because of the remediation efforts, becomes unjust or requires further litigation. These considerations represent exactly the type of prudential concerns contemplated by the ripeness doctrine. *See Digital Properties, Inc.*, 121 F.3d at 589. Thus, the court finds that Valley Creek's claims for damages have not yet ripened and must be dismissed.

Valley Creek's claim for injunctive relief also fails. A request for a permanent injunction, like Valley Creek's request for a remaining life study, is not cognizable as a freestanding claim for relief. *See Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117,

13

1127 (11th Cir. 2005) (stating that "any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. There is no such thing as a suit for a traditional injunction in the abstract") (citations and internal quotation marks omitted); *Sierra Club v. Tennessee Valley Authority*, 592 F. Supp. 2d 1357, 1374–75 (N.D. Ala. 2009) (recognizing that injunction requires infringement of a legal right). Because Valley Creek's claims for damages are not yet ripe, Valley Creek has not shown the infringement of a legal right and is not entitled to injunctive relief at this time.

## IV. Conclusion

Patience can be as important in litigation as it is in cooking. In this case, Valley Creek's lack of patience necessitates the dismissal of its claims. For the reasons discussed above, Valley Creek's damages claims have not yet reached the level of ripeness necessary for adjudication. Further, Valley Creek's claim for injunctive relief cannot stand on its own. Accordingly, by separate order, the court will **GRANT** Colonial's motion to dismiss, and will **DISMISS WITHOUT PREJUDICE** Valley Creek's claims for damages and injunctive relief.

**DONE** and **ORDERED** this 7th day of January, 2020.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE